Wonderful. May it please the court, I wish to expand on two of the trickiest topics from the brief and then suggest a way forward that's narrowly tailored and follows Supreme Court precedent as is required. One of the really tricky parts of this case is that the ransom case, which appears to be quite on point and from the Supreme Court, has what appears to be contradictory dicta. On the one hand, it says that we can consult with IRS guidance and on the other hand, it specifically states the hypothetical that if a debtor has expenses, considerable expenses, on an automobile, they may not be able to take above the standard that's listed in the table. The Supreme Court dicta in this case, I think, really is a hypothetical and the Supreme Court raises it without raising any facts to support it. The dicta expressing that there is a strict limit on transportation expenses, hard stop, taken on its face would prevent, for instance, a trucker from taking fuel expenses or maintenance expenses on his truck if he was an owner operator. Similarly, someone who is self-employed and does considerable work for Lyft or Uber, any of the other delivery services that are so prevalent nowadays, wouldn't be able to take appropriate deductions for fuel. Is that necessarily true? I mean, in those cases, those sound to me like they're not the kind of bubbled up in this particular category. They're business expenses. You have one of those Chapter 13 business cases and wouldn't they be a business expense rather than a cost of transportation? The chapter 13 business expense or business case differs from court to court. In the court in which I practice, it's determined by whether or not the trustee asked for a business examination. In the second of those examples of the Lyft driver, frequently, it's not the case that they need to do a business examination. Frequently, it's not the case in which they present a detailed profit loss statement for examination, but it is certainly the case that they would spend considerably more transportation expenses on maintenance and fuel, the exact things that the standard is supposed to cover. Let me ask you this because the thing that I'm wrestling with in this is that those are excellent examples of places where we might have an anomaly. But is the system really without discretion? The trustee certainly can choose not to object to that. The trustee, the Chapter 13 trustee can look at this and say whether he calls it a business case or not and say, hey, to make money, a Lyft driver's driving his car all day. I'm not going to object to that category. Isn't this a situation where the discretion is with the trustee? And the only problem is if the trustee doesn't agree with you, the court lacks discretion. And if that's true, what's wrong with that? Well, your honor's already begun answering the question. The system isn't run with trustees making final decisions. The trustee certainly has discretion not to object, but the trustee's discretion has the check of judicial review. The court is the entity responsible for assuring that these things comply with the law. The law in this case is what we're trying to determine and how that discretion should be exercised by the trustee and how these things should be judged by the court. The IRS manual in this case, the IRS handbook, excuse me, suggests that the IRS follows a standard called the production of income test, which is cited in the brief. That draws the production of the debtor's income and essentially can the debtor's paycheck results without incurring the expenses due specifically to transportation. And I believe that in all of these examples, including the case of hand, the production of income test would result in a reasonable reconciliation between the strictures of the means test and the admittedly rare cases in which expenses far exceed that amount. When those expenses far exceed the means test are related to the production of the debtor's income. In this case, because the debtor needs to travel many, many miles, pay bridge tolls in order to arrive at work. That should be an exception to the means test. Is there any limit then on the bankruptcy court? Do we always look behind each category? What stops us from just exercising discretion with respect to each category on the means test? The means test doesn't seem to intend to do that. So the means test has several categories in which the court is supposed to exercise much more limited discretion. And in some cases, perhaps no discretion. However, the Supreme Court on ransom stated that the court does have discretion to look at how the IRS looks at these things only in certain sections of their guidance. The handbook that cites the production of income test is one of the sections that was cited by the Supreme Court. The Supreme Court called it common sense to look at this and called the guidance persuasive. But isn't ransom distinguishable? I mean, ransom involved, and it didn't involve a specific look at us. It was looking at something that we knew was changing. The form required something and ransom was forward looking and saying it wasn't one of the categories where the code says these are the numbers you use. The code doesn't say actual. The code says use the guidelines. At least that's the way I see it. So going back to your point that there's some places where we lack flexibility or discretion. Why isn't this one of them given the plain language of the statute? The plain language of the statute was insufficient for the ransom court to find what it did. And that's why, at least not without considerable struggle, and that's why the Supreme Court found the IRS guidance in it so persuasive. What the ransom court did was it found categorically that ownership in the title of the chart that said ownership expenses doesn't mean that you only own a car. You need a lot more than that. Now, at first blush, a plain reading would seem to indicate that if you own a car, you would get an ownership expense. But the debtor in ransom lost all the way up, and it lost based largely on the reliance of the Supreme Court looking at the IRS and its standards. The IRS in ransom created essentially an entrance threshold, stating that according to the IRS guidance, in order to claim the ownership expense, you needed not only to own a car, but to make payments to a secured debt on the car. That threshold isn't inherent in the code. It merely says to look at the standard. In this case, the IRS also has what I call an exit threshold. And I think the IRS certainly understands that at a certain point, their standard is insufficient and undermines the purpose of the standard itself, which is to allow debtors to pay the IRS, in the IRS's case and in the bankruptcy case, to pay creditors as much as can afford. If you won't allow a debtor to get to work or to pay for fuel, then the debtor can't pay the most that they can afford. They can pay something less than that. I think, but I get back to my point of the holistic view of the trustee, because you're asking us to focus on a specific, you want us to take one specific line item and say, this line item should be changed. To do that, don't we have to have an evidentiary hearing where we look at the entirety of the debtor situation? Do they have room in their food budget? You're asking us to give them a line item, a point of discretion, but you're not acknowledging that it's in the whole scope of things. Yes, they may spend more on transportation, but maybe they've got excess budget someplace else. I mean, very high income debtors. So what's wrong with leaving that discretion with the trustee who has done the 341A meeting, has reviewed the documents, knows far more than we do. How can, without, again, a potentially multi-day evidentiary hearing. I'm concerned about where this takes us, if we're really going to do it right. I understand your honor, the judge must be able to review the trustee's work. And so leaving the discretion solely with the trustee, I think Rob's due process. Is that what CISC sort of said? I mean, we just got that recent decision from CISC, and CISC seems to stand, at least in part, for the proposition that trust the trustee. You know, if he didn't object, you don't get to look behind him. And granted, a different item, but. Certainly, these things are much easier if the trustee doesn't object, then we wouldn't be here for that case. That's exactly right. And the judge certainly could ask for multi-day evidentiary hearing if the judge thought that that was appropriate. And if also the trustee exercising the trustee's discretion finds that that's appropriate, that's not necessarily going to be required. But it might be necessary. I'm just, I'm concerned about the burden on the taking, you know, again, maybe before CISC, I would have had a slightly different viewpoint, but that's a mind-altering case. I'm not certain that the burden on the bankruptcy system or making a bankruptcy judge's job easier is a constitutional concern. It's not, but what about the cost to you, your client? I don't, I don't care. As I always say, I own a robe, I have access to a courtroom. It's my job. I don't care if I do evidentiary hearings on issues like this all day. But can the Chapter 13 system sustain the kind of review that would be required under your rule? I believe that it can. This is, I encourage the adoption of the production of in-depth, of ink is something that is commonsensical, something that is persuasive, something that is limited and avoids a slippery slope and something in the hypothetical that a judge orders a multi-day hearing and the debtor can't afford it. It's something that the debtor can always cave on. But to say that because that's possible, there should be no chance for the debtor to be heard, I think is unjust. And I request that I can reserve the remaining time for rebuttal. You will get it. Thank you. All right, Mr. Gasvini. Your Honors, may it please the Court, Nima Gasvini appearing on behalf of Appellee Martha Brunetsky, Chapter 13 trustee. Your Honors, the briefs are, I believe, interesting in this case because they rely on the same case law, but for different arguments, which is not always the case. The main issue before the panel is the application of Section 707. The statute is clear, monthly expenses shall be the debtor's applicable monthly expense amounts specified under the national and local standards. The judge in the bankruptcy court in this case had no need to refer to anything else. Justice Kagan in ransom referred to other areas of the IRS guidelines in order to understand the term applicable better. But the judge's tentative ruling in this case, which was then adopted as the court's final ruling, said that there is no need for further explanation of anything in this statute. And that's why the judge didn't exercise the discretion to look beyond the tables. And I have to also address one of the should not have the discretion, but that flies in the face of Section 1325B, which specifically, the statute specifically gives that duty to the trustee. And turning to how the statute has been interpreted since then, in Lutke, this panel found that the means test replaced the court's and so what's happening here is that the statute is working exactly as it was intended to do. And the trustee in this case did an examination of the debtors and determined that their that the IRS standard for transportation should be the cap for their transportation expenses. While a court may turn it to financial collection standards, it doesn't have to, and Ransom supports that because Ransom also said that IRS's guidelines are not incorporated by the statute. The Lutke opinion supports this, and this panel recognized that the guidelines can be persuasive, but not controlling, so long as the guidelines are not at odds with the bankruptcy code. If the panel adopts the Ransom standard, that palates reasoning for the interpretation of Section 707, it would do just that. It would replace the language of the statute with a discretion that was not written into law. So in that sense, do you think the guidelines are at odds with the bankruptcy code? In this case, they are. Yes, Your Honor. If the panel or the court were to look beyond the tables in this case, it would be at odds with the express language in the statute, which says that certain expenses are limited to those in the national standards and local standards produced by the IRS, and other necessary expenses are categories for which the debtors can So when do we look at the guidelines? When the court needs further information in order to understand something in the statute. So for example, in Ransom, Justice Kagan turned to the guidelines in order to understand the term applicable better because that is not something that was defined in the code. But in this case, Judge Novak in the bankruptcy court didn't need to turn to any guidelines in order to interpret the statute and apply it. Now, he has what I think is an excellent example, Mr. Gustafson has an excellent example of a situation where it would just be fundamentally unfair to, and nonsensical even, to say you can't look at hire for fuel expenses, a long haul trucker, a Lyft driver. How do we reconcile those kind of situations with the lack of, you know, the trustee, we trust our trustees to be aware of such issues and to not bring frivolous objections to a plan. But if we had a rogue trustee who was doing that, what, do we have no recourse at all or how does that fit into your argument? Your Honor, the chapter 13 trustee that I represent always allows for fuel expenses when the debtor is self-employed or drives Lyft, Uber, or is a trucker because those are legitimate business expenses. In this case, the trustee's examination of debtors found that the debtor's transportation expenses should be capped by the IRS standards. And when 1325 gives the trustee the discretion to object, and in this case the trustee did object, the court would then have to examine the debtor's compliance with because the trustee looked at the debtor's schedules, the trustee looked at the debtor's income, and found that, for example, as the brief alludes, the debtors have three cars, one of which is a GMC Denali, which is a very high gas usage vehicle, but there's only two which they're spending about $1,400 a month in maintenance payments for, which is not necessary for their transportation. So those are some of the considerations that the trustee takes into account before objecting. So the trustee is looking for belt tightening in other areas which might have rendered this objection unnecessary? Right, specifically in the panel and the court adopted the debtor's argument, not only would 707 be eviscerated, I mean it would serve no purpose at that point, the trustee and the court would have to examine every single category of the debtor's expenses, which they did before the enactment of BAPCFA. But I have a hard time understanding what the appellant is actually seeking here. Is it only one expense at a time that the trustee should consider without a look at other expenses? And is the appellant arguing that if it is actual expenses and the debtor's expenses are actually less than the expenses, should the debtor then be entitled to less of a deduction? That's certainly something that Justice Kagan alluded to in the ransom opinion, if a debtor's actual expenses exceed the amounts listed in the tables, for example, the debtor may claim an allowance for the specified sum rather than for the real expenditures. There was another argument that Justice Kagan and the decision did not address in the ransom opinion, but was a footnote, and that was an argument between the solicitor general and the debtor about whether the IRS deduction is a cap or if a debtor's actual expenses is less, is the debtor entitled to less? So I think if the panel and the court were to adopt the appellant's argument, that's where we would find ourselves is looking at every single category for which the means test was to replace the discretion of the court and the trustee for, and basically turning back the clock to pre-2005. Is the debtor in compliance with the plan at this time? Yes, Your Honor. Okay, so the debtor's been able to make the plan payments? Yes, Your Honor. Okay. And I have nothing more to add, but I'm happy to answer Your Honor's questions. Let me ask you a couple of questions about some of the jurisdictional arguments that you've made. You've argued that the notice of appeal was defective, but is there any prejudice that you've suffered at all through this process? I mean, it seems clear from the quality of your briefing that you knew what the issue was, and you knew that everything that was in this order was in front of the panel. We're willing to concede that we were not prejudiced by that deficiency. In fact, as soon as we became aware of it, we notified counsel, and counsel can attest to that. Okay. All right. Well, thank you. And then the second sort of procedural question is a mootness question. You argue that because they in effect capitulated, the court said, I am never confirming a plan with this language in it. They then capitulated and did what the court wanted to do. You've argued that they somehow mooted the appeal. Can you expand on that argument? Your Honor, there was an odd turn of events in this case and a number of other cases. The brief mentions that the Lara case, which was a bankruptcy case before the same judge earlier in the year, if not at the end of 2019, in which the judge issued a memorandum, which was subsequently reversed by the judge's decision in the tentative ruling in this case and subsequent final ruling. So when the judge issued the original memorandum, counsel for debtors filed multiple other cases in which the debtors argued that their actual expenses should be deducted from their means test. This is just one of those cases that eventually made its way before this panel. It was an odd turn of events because before we had oral arguments on the judge's tentative ruling, the debtors had already amended their plan and amended their means test. So I believe the last line in the judge's tentative ruling was, you know, if the debtors wish to argue otherwise and don't agree with this ruling, then the hearing will be held on March 6th. But then on March 2nd, the debtors amended their plan and the means test. So at that point, the trustee was under the impression that debtors were no longer disputing the judge's tentative ruling. But they did argue against it at the time of the hearing, right? They did, your honor. And in order on sustaining, you know, your objection on that issue too. Yes, that's right. And confirming the plan that the debtors had subsequently filed. If we know how they proceeded, is there any other way they could have proceeded that would have made sense? Because I just, you know, it's an interlocutory order. So they can't appeal for the denial of the objection to the plan, I don't believe, without leave anyways. And I don't know that we've granted it. Didn't they follow the appropriate steps and properly preserve that issue for appeal here? Your honor, the tentative ruling hadn't become the order of the court yet as when the debtors filed their amended plan. So when the court held the hearing and subsequently entered an order, making the tentative ruling the court's order, that issue was already moved before the bankruptcy court. So your argument is it would have been, see if I've got this right, it would have been fine if they waited for him to say, I'm denied, I'm sustaining the objection, here's my order. If they had then modified their plan, it wouldn't have been mooted, but it was because they prematurely did that? Exactly. So at the time the hearing was held, the issue was already moved before the bankruptcy court. And for that reason, the issue is also moved before the panel. But we can grant effective leave. I believe the panel is capable of fashioning a ruling that would give argument is what I'm saying. I understand what you're saying. And I think you just, that's more nuanced argument than certainly what I had, at least in my own head, my colleagues may have. Well, I was going to say the counsel, it seems like if, while I appreciate the procedural irregularity, their appeal from the order confirming was clear that they didn't believe that that was the appropriate and they want us to, to address it. So yeah, technically, maybe they should have waited for the ruling to be issued, but it's clear where they are. The only other way they could have done it is wait for dismissal, not amended and dismiss the case and then been subject to everything else. So this was the logical way. It doesn't seem like a courtroom. Thank you. Thank you, Judge Gantt. All right. I wanted to hear something on those because we do have those issues and Mr. Gustafson can address them if he wants to, but I think at least the first, you probably don't need to. They're interesting. Anything further, Mr. Gaziantini? No, Your Honor. Okay. Any other questions? No. All right. Thank you very much. All right. Mr. Gustafson, you have three minutes and 32 seconds. You're muted. You're muted. I don't know if we get, there you are. Thank you. If I just do my best to address new factual issues as well as my limitation on how, on some places I may not be able to address. The trustee stated that the recently moved to modify their plan to a token payment per month over the next little while. It appears that the debtor's funds have run dry and they're trying to find a way forward. This court would certainly help address that. That particular problem is not before us, but they certainly have the right to modify based on changed circumstances. There are a lot of changed circumstances out there these days. Let's be honest. In as much as the court is persuaded by the debtor's ability to make post-petition payments based on opposing counsel's representation, I would merely add that fact. I appreciate that. Second, opposing counsel stated that $1,400 a month were allocated to maintenance of a mobile home. And those are not the expenses that are at question here. Those aren't things that after the penultimate amendment of the schedules, those weren't things that the debtors were claiming as allowable transportation expenses. Understood, but was it a secured claim? I think that's what, are they paying debt service on that? Yeah, I believe so. The point is in exercising discretion, a jurist might look at both their extraordinarily commuting expenses. Were they driving a gas guzzler? Was there public transportation they could use? Could they carpool? Was there vanpool? All the different things you would look at. But they could also look at, is it really fair to their creditors to let them have three cars, and I don't know if there's debt service on all three, and debt service on a mobile home. It just sort of mushrooms, I guess. You want it to be a linear, let's just look at this, and I just don't think that's how it works. Well, that's the way that the IRS would allow review. And where the Supreme Court has looked at IRS guidance to prevent debtors from taking certain expenses, the IRS also has guidance that allows debtors to take excess expenses within certain narrow categories. And that's why the debtors would encourage this court to reverse. The final piece of rebuttal is that it was represented that the judge found that he didn't need to examine any extraneous evidence, including IRS guidance. I believe that the judge found that he shouldn't review any extraneous guidance, which is significant. And with appropriate appellate review, the judge would find that he could, following ransom, look at extraneous guidance, whether additional expenses in meeting the production of income standard is allowed. So that would be within his purview. And it is appropriately, narrowly tailored. So I would encourage the panel to self-find. All right. Well, thank you very much for your good arguments. This is, it was well done. And we will take this under submission. Thank you. Thank you.
judges: Taylor, Brand, Gan